IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

FILED
OCT 28 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

KEITH MUSTIN
    Plaintiff

-v-

LYNEAL WAINWRIGHT, RANDON
WATSON, AND BLAIR SMITH, SUED
IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES, WENDI J. GRIFFITH,
AND KASEY PLANK, AND MICHELLE
TURNER SUED IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITIES,
MATHEW GUILLER, RYAN JAMES,
MELODY BIANCHI, AND KATRINA
ROSTORFER, SUED IN THEIR
INDIVIDUAL CAPACITIES.

    Defendants

Civil Case Number: 3:21-CV-321

Judge Helmick

Magistrate Judge Burke

Jury Demanded


AMENDED COMPLAINT


I. Previous Lawsuits:

A. Have you begun other lawsuits is state or Federal court dealing
with the same facts involved in this action or otherwise
relating to your imprisonment?   Yes

B. If your answer to A. is yes, describe the lawsuit in the
space below.

    1. Parties to the previous lawsuit
        Keith Mustin
           Plaintiff

    2.    Mathew Guiller, Ryan James, Heather Pack, Melissa Atkins,
        Janet Broughton, Melody Bianchi, Katrina Rostorfer,
        Michelle Turner, and Steve Hartford
           Defendants

-2-

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

*still pending*

6. Approximate date of filing lawsuit

7. Approximate date of disposition

II.   Place of Present Confinement

A. Is there a prisoner grievance procedure in this institution?   YES ☑   NO ☐

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

YES ☑   NO ☐

C. If your answer is YES,

1. What steps did you take? *Kite, Informal Complaint, Inmate Grievance, And The Appeal.*

2. What was the result? *No action was taking to Solve the Plaintiff's issues*

D. If your answer is NO, explain why not

E. If there is no prison grievance procedure in the institution, did you complain to prison authorities?

YES ☐   NO ☐

F. If your answer is YES,

1. What steps did you take?

2. What was the result?

3. Docket #1 Civil Case No. 3:20-cv-00755-JGC.

4. Name of judge to whom case was assigned, Judge James G. Carr.


Parties

1. The Plaintiff, Keith Mustin, is incarcerated at Marion Correctional Institution (MCI) during the events described in this complaint.

2. Defendant Lyneal Wainwright is the Warden employed at MCI and is sued in her individual and official capacity.

3. Defendant Randon Watson is the Deputy Warden of Special Services employed at MCI and is sued in his individual capacity.

4. Defendant Wendi J. Griffith is the Buckeye Unit Sargeant employed at MCI and is sued in her individual and official capacity.

5. Defendant Kasey Plank is the MCI Institution Inspector employed at MCI and is sued in her individual and official capacity.

6. Defendant Blair Smith is the Chaplain employed at MCI and is sued in his individual and official capacity.

7. Defendants, Mathew Guiller, Ryan James, Katrina Rostorfer, and Melody Bianchi are Aramark Food Service staff employed at MCI and is sued in their individual capacities.

8. Defendant Michelle Turner is the Food Service Operator employed at MCI and is sued in her individual and official capacity.

9. Defendants Wainwright, Watson, Smith, Griffith, Plank, and Turner (who being sued in their individual and official capacities) had signed their Department of Rehabilitation and Correction (DRC) 1225 Standard of Employee Conduct agreeing that they must abide by all Ohio Department of

-3-

Rehabilitation and Correction Policies, Ohio Revised Codes, Ohio Administrative Codes, State Laws, and Federal Laws while working under American Correctional Association and Ohio Department of Rehabilitation and Correction.

10. The Defendants of Aramark signed their (DRC) Form 2554 Declaration of Understanding Form, (DRC) 4376 Standard of Conduct For Contractors, and (DRC) 1787 Acknowledgment of Contractor Orientation Form that shows that Defendants Guiller, James, Bianchi, and Rostorfer must abide by all O.D.R.C. Policies, Ohio Revised Codes, Ohio Administrative Codes, State Laws, and Federal Laws while working in the MCI prison.

11. All the Defendants have acted, and continue to act under the color of state law at all times relevant to this complaint.

12. Defendants who are sued in their official capacities will be responsible in declaratory judgments and injuctions and since also they are sued in their individual capacity will pay monetary damages.

# # 5

## IV Statement Of Claim

This is a civil rights action filed by Keith Mustin, a state prisoner for damages, declaratory judgments, and injunctive relief under 42 U.S.C. 1983 alleging the violations of The Establishment Clause, Free Exercise Of Religion, Freedom Of Religion, and Retaliation of The First Amendment Of The United States Constitution, Cruel and Unusual Punishment Of The Eighth Amendment Of The United States Constitution, and Due Process And Equal Protection Of The Fourteenth Amendment Of The United States Constitution.

The Plaintiff also alleges the violation of State, Policies, Rules, and Codes as well as violations of The Religious Land Use And Institutionalized Persons Act and Religious Freedom Restoration Act.

1. The Plaintiff (who is a muslim) witnessed how defendants had shown the favoritism of Christians over Muslims by placing Jumanah (Friday Services) in a small fire hazard room over Christian events, programs, etc. in the chapel (which is the only large space that allows 60 or more muslims to attend Jumanah.

2. The Plaintiff witnessed how defendants during Ramadan showed unfair treatment for muslims with their food, and fasting beliefs during the holy month.

3. The Plaintiff had exhausted his administrative remedies (Ohio Prison Grievance System which is kite, informal complaint, inmate grievance, and Chief) to the defendants and was retaliated by the defendants in unlawful and cruel ways.

# #6

## Facts

1. In 2018 and 2019 the Plaintiff had witnessed an huge amount of favoritism of Christians over Muslims concerning each religious services. When Ms. Wainwright, Mr. Watson, Chaplain Smith had received a number of complaints of the Plaintiff addressing his concerns about moving Islamic Services (Jummah and Taleem) to a smaller fire hazard room, these defendants had failed to address his issue. The defendants instead moved Islamic services to small rooms for religious plays, Christian Plays, education programs, and other events. The rooms that muslims (inmates) were placed at can not occupy 60 or more muslims for Jummah services leading to a fire hazard issue and muslims not able to fulfill their religious obligation.

2. On May 21st 2020, the Plaintiff was terminated from his Food Service Job based on retaliation from alerting Defendants Ms. Turner, Mr. Guiller, and Mr. Watson on the improper treatment of muslims during 2020 Ramadan month.

3. On May 20th 2020 Sargeant Wendy J Griffith found the Plaintiff guilty of an irrelevant conduct report that was supposed to be heard in a certain amount of time. The next day he was re-classed to another job and was terminated from his Food Service Job.

4. When the appropriate administrative staff of M.C.I. seen the flaws of the conduct report written on the Plaintiff, his

# # 007

conduct report was withdrawn on <u>May 27th 2020</u> and he was reinstated back to Food Service on <u>May 28th 2020</u>.

. Though The Plaintiff was reinstated back to Food Service, Defendants Ms. Wainwright, Ms. Planky, and Mr. Guiller, made it difficult for the Plaintiff to actually start back to work.

A. The Disrespect Of Jummah (Islamic) Services that violates the 1st Amendment, 8th Amendment, 14th Amendment, And The Religious Land Use And Institutionalized Persons Act And ~~Freedom~~ Religious Freedom Restoration Act.

On a number of Fridays, the Plaintiff had witnessed the Islamic Services (Jummah & Taleem) constantly moved to a smaller location because Defendants Ms. Wainwright, Mr. Smith, and Mr. Watson rather have Christianity Events, Educational Programs, and other irrelevant events on Friday.

On April 13th 2019 Plaintiff had exhausted my grievance remedies to Former M.C.I. Deputy Warden Of ~~Sp~~ Special Services Ms. Wampler concerning ~~our~~ constantly movement of Jummah and Taleem Services to smaller locations because of events and programs that were Christian based faith. The Plaintiff had received a response back from Ms. Wampler moving an important Islamic Service that celebrates "The Day Of Gathering" every Fridays like every Church Service is on Sundays. She let the Plaintiff know that "their (Christian and Education Programs) must be placed in a room that fills at least 100 people like the Chapel

#  8

3. But both Jummah and Taleem Services were placed in a classroom that housed at the max of 36 people. On Jummah Services at least 60 inmates attend the Services. When the Plaintiff sent his grievance to Ms. Plank on April 20th 2020, she agreed that the location that Jummah was placed at is a Fire Hazard and an unsafe environment for a large amount of inmates to attend. As for Taleem Services, M.C.I. Officers and superiors(Lts and Captains) won't let inmates attend Islamic Teachings because Christian Plays, had family members showing up to the events. Therefore the locations that Taleem was placed at was locked down and the Plaintiff and other inmates were forced to go back to their dorms. (1)

4. This happened under Ms. Wampler and is now happening under M.C.I. Chaplain Blair Smith and Mr. Watson as well as under the approval of Ms. Wainwright.

5. The deprivation of a proper Jummah Service and Taleem Service clearly demonstrates that the Plaintiff's religious exercise. Was substantially burdened forcing him to follow his religious beliefs or let the following defendants disrespect his religion to a point that Islamic Services will not exist at M.C.I at all. The Plaintiff was forced to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial burden on an adherent to modify his behavior and to violate his beliefs. After all, the Plaintiff is entitled under the 1st and 14th

#9

Amendments to a reasonable opportunity to exercise his religion. First (through his grievance remedies concerning his rights to worship Islam in Jummah at an appropriate location) shows the belief and practice he is protecting is religious within his own "scheme of things." Second, the Plaintiff witnessed other muslims could not spiritually fulfill their religious obligation attending Jummah in a crowded location. The Plaintiff faithfully goes to Jummah every Friday proving that his belief is sincerely held. Third, the following individuals shows a bona fide favorite of Christian events and programs over "The Day Of Gathering" that muslims celebrate every Fridays, which Jummah & Taleem is moved in a Fire Hazard room. Therefore the defendants' behavior infringes upon this practice or belief.

6. The Plaintiff also witnessed that Mr. Smith continues to still show Christian favoritism over other religions during the 2019 and present by the following:

A) Letting Chaplain Workers have access to senstive Ohio Department Of Rehabilitation And Correction documents (example: Chaplain's personal calendar where the inmates can put church, plays, and events on Fridays.

B) Having access to King James Version Bible on GTL Tablets and E-Books on Jpay Player and no access to the Quran on any of these companies.

C) Non-Christians cannot participate in the Embark Re-Entry or any Faith Base program unless you're a Christian.

D) Since 6-26-20 during the pandemic, Chaplain had each religion to have a day to watch religious programs, shows, and lectures on their religious day. Islam, Catholics, Jews, and Wiccans have one day of the week while Christians have three days a week and even on one of the other religion's day.

# 10

The defendants Mr. Smith, Ms. Wainwright, and Mr. Watson are aware of what the chapel workers do to assist in ~~access~~ denying the Plaintiff (based on equal protection clause) within their state policies, codes, and rules under their jurisdiction his protection of the laws, codes, and policies. These defendants are obligated to treat religions in an even-handed manner but their religious viewpoints favors Christianity. These defendants show better treatment of Christianity beliefs (having inmate chapel workers help them provide Christian Events of Fridays) and restricts muslims from fully participating in their Jummahs by placing them in a smaller room. This restricts the number of muslims to fulfill their religious obligations being placed in a fire hazard to room. This is not necessary to serve a compelling interest or even the least restrictive means of furthering that compelling governmental interest. These defendants know that it was not important to have Christian events of Islamic Fridays. This is not security-related and ~~possecasbloo~~ they have no burden of "demonstrating" that their restrictions (of placing muslims in a smaller room for Jummah for a Christian event) are valid. Therefore these defendants cannot ~~o~~ imposed a burden on one kind of religious practice on the ground that other practices are permitted. The Plaintiff's religious belief be held to be constitutionally protected. The Plaintiff does so through his 1st Amendment and 14th Amendment rights as well as The Religious Land Use And Institutionalzied Persons Act & Religious Freedom Restoration Act. M.C.I. is an Christianity based institution and these defendants will do whatever it takes to keep this ~~so~~ institution as an institution to strengthen Christian Belief to non-believers.

 11

(B) The Unfair Treatment Of Muslims during the 2020 month of Ramadan violates the 1st, 8th, and 14th Amendments Of The U.S. Constitution, Failure To Act, and Deliberate Indifference

In the month of the 2020 Ramadan (Islamic Month), the Plaintiff had witnessed the following disturbing issues concerning the Muslims' meals and Sahoor (breakfast) bags :

a) Raw boiled eggs being placed in the breakfast bags.

b) Closed to expired bananas (soggy and brown-colored) being placed in the breakfast bags.

c) Expired milk being handed to muslims while they received their Ramadan Meal and Sahoor Bags.

d) Stale bread and peanut butter being placed in the breakfast bags.

e) Almost every Ramadan Meal Muslims had Cooked Turkey Bologna or Ham as a main course.

f) Small portions of side foods (Mac&Cheese, beans, etc) which was way below the nutrious protien, volume, calories, etc. that muslims had to receive while fasting and especially while fighting against COVID-19

g) Muslims received Ramadan Meals with food (main course and side foods) smashed together in the trays.

Muslims supposed to received a date (fruit) each day for thirty days to break their fast at sunset before they eat their meals. After nine days of receiving dates, the muslims had received the dates no more as well as drink packets. At the end of the day the Imaam (Islamic Spiritual Advisor.)

#⊠ 12

always bring enough dates from the approved vendor into Aramark for Ramadan and the day of the Islamic Feast. Also the defendants Mathew Guiller, Ryan James, Melody Bianchi, Rando Watson, Michelle Turner, Blair Smith, and Kasey Plank were aware of these issues as the Plaintiff had alerted these matter through his exhausted remedies:

(1) Kites To Mr. Guiller.   5-6-2020

2) Kite To Mr. Watson   5-9-2020

) Kite To Ms. Turner   5-22-2020 and   5-25-2020

4) Kite To Mr. Smith   6-5-2020

5) Informal Complaint   6-5-2020

6) Grievance To Ms. Plank   4-29-2020 and   5/20/2020

Even after he exhausted his remedies, none of the defendants addresse his issues and not even provided him with the approved Ramadan Menu by Ohio Department Of Rehabilitation And Correction. What these defendants did was mere negligent (carelessness) and actual malice (intent to cause harm). The defendants had knew that the Ramadan meals and Sahoor Bags conditions were "objectively cruel" and did nothing to fix the meals (this is the "subjective" approach to recklessness. The defendants can be held liable based on what they should have known or what was

# #13 A

obvious on how they violated the Plaintiff's Freedom Of Religion and Free Exercise Of Religion since the Plaintiff's lack of nutrion from his meals distract him from reading his Quran, pray regularly, and fulfill his religious obligation of achieving his fasting properly. This leads to him not being in risk of physical injury but also spiritually injured as well. This is the "objective" recklessness standard that the defendants let happened since they failed to respond reasonably to the known risk from the Plaintiff's exhausted remedies. Through his remedies, the Plaintiff had shown "the belief or practice asserted was religious in his own scheme of things" and is "sincerely held.

The Plaintiff had witnessed the Jewish Brothers had their Passover Menu by the Muslims Ramadan Menu did not appeared on the general population email that all inmates can see. The defendants (including defendant Ms. Wainwright) had confer a privileged status on the Jewish faith and singled out Islamic faith mistreated the religions violates the Establishment "Clause. Therefore "a religious service of one sect is treated differently than a religious service of other sects" is "fatal" to a defendant's case because it "amounts to the state preferring some religious groups Christianity and Jewish) over the plaintiff's religion in violation of the First Amendment.

5. The Plaintiff witnessed how other religious month were treated right but the 2020 Ramadan Month was treated unfairly (see Ms. Plank's grievance denying the plaintiff within its jurisdiction the equal protection of the state policies, codes, and laws. Therefore the Plaintiff had established more

# 13B

than differential treatment alone — a discriminator intent or purpose that is required. The Equal Protection Clause Of The Fourteenth Amendment embodies the principle that all persons similarly situated should be treated alike.

Furthermore the defendant who knew or reasonably should know, of a constitutional violation may be held liable if they failed to do anything about it. Through the Plaintiff's exhausted remedies, the defendant's had the power to correct the violation and the duty to act. The defendant also can be held, p liable for failure to act on prior complaints by the plaintiff and for failure to make policy or to take action to prevent predictable violations of rights within their areas of responsibility. These defendants set in motion a series of events that they knew or should have known would cause a constitutional violation, even if others actually performed the violation.

(C) Plaintiff's Wrongful Termination From His Work Assignment Violated His First, Eighth, And Fourteenth Amendment As Well As Failure To Act And Deliberate Indifference.

1. Even after the Plaintiff had exhausted his remedies (see the (B) Section on pages 9 & 10 ) he was retaliated by defendants Mr. Guiller and Ms. Bianchi as they wrote a conduct report accusing him of stealing food and being out of place. The Plaintiff went to chow with his dorm so that is not being out of place. Also the Plaintiff had also received his tray from a Aramark Coordinator so he cannot be

# # 15

accused of stealing. The conduct report was written on 5-9-2020 . This is because the Plaintiff was standing up for his religious beliefs concerning the unfair treatment that muslims were receiving concern their Ramadan meals and Sahoor Bags. What the defendants did not let the Plaintiff be entitled under the 1st and 14th Amendments an reasonable opportunity to exercise his religion. Therefore the Plaintiff was engaged in protected conduct (protecting his Islamic Month). Then an adverse action was taken against him (such as writing an conduct report) that would deter a person of ordinary firmness from engaging in that conduct and the adverse action was motivated, at least in part by the protected conduct. Filing a grievance is constitutionally protected under the 1st Amendment. Retaliation based upon a prisoner's (such as the Plaintiff) exercise of his or her constitutional rights violates the constitution. Also the defendants are private contractors working for Aramark and must have the Post Officers (of M.C.I.) write the conduct report since the officers work for Ohio Department Of Rehabilitation And Correction (O.D.R.C.). Therefore this was retaliation against the Plaintiff by Mr. Guiller and Ms. Bianchi which they knew that they can only file evaluation reports and incident reports but instead what they did was sadistic and malicious basically mere negligent being deliberate indifferent.

2. Now on 5-20-20, the Plaintiff had heard his conduct report by Defendant Wendy J. Griffith that Mr. Guiller and Ms. Bianchi had written. The Plaintiff showed that he received the tray by the Coordinator willingly and was not stolen. Instead she found the Plaintiff guilty and

#15

quickly reclassed him from his Food Service Work Assignment. One thing that the Plaintiff had witnessed that Mr. Guiller supposed to write the conduct report and put his signature on it. Instead Ms. Bianchi put her signature on it. The Plaintiff alerted this matter to defendant Mr. Watson and he did nothing about it. Therefore he and Ms. Griffith is held liable for failure to make policy or to take action to prevent predictable violations of rights within their areas of responsibility.

3. Ms. Griffith also went pass the time table on hearing the Plaintiff's conduct report on time. She is held liable since she was informed of due process (of hearing the Plaintiff's conduct report) violations in other ways and failed to act on them by withdrawing the conduct report. Ms. Griffith had failed to correct constitutional violations (such as cruel and usual punishment & due process) within her area of responsibility since she knew the time to hear the Plaintiff's conduct report on time and should have known that Mr. Guiller and Ms. Bianchi cannot write an conduct report.

4. What these defendants did can be ruled as a "Checkmate doctrine" based on the Plaintiff:
(A) Fought for his 1st Amendment Right concerning the 2020 Ramadan.
(B) Mr. Guiller and Ms. Bianchi quickly wrote an irrelevant conduct report to try to shutdown the Plaintiff's religious beliefs and rights under his 1st Amendment Retaliation Claim.
(C) Ms. Griffith quickly found him guilty of the conduct report and terminated

# 17 

...m from his work assignment.

These defendants worked together to try to prove that the Plaintiff had committed "an actual violation of prison rules." and "the finding (is) based on some, evidence of the violation (such as hearsay) the finding essentially checkmates the retaliation claim. based on their misconduct.

6. Through his grievance process concerning the unfair treatment of muslims during Ramadan, retaliation by these defendants against the Plaintiff was active, and his 1st and 14th Amendment were violated. The Plaintiff's were sincerely held while the defendant's behavior infringes upon the practice or belief.

7. These defendants knew the policies they violated and they had the power to correct the violation and duty to act. Mr. Guiller and Ms. Bianchi and Ms. Griffith "set in motion a series of events" that they knew or reasonably should have known would cause a constitutional violation even if all of them together actually performed the violation. his were between mere negligence (carelessness) and actual malice intent to cause mental and spiritual harm.)

. Defendants Mr. Guiller and Ms. Bianchi had also systematically urgeted other muslims violating their 1st and 14th Amendments. ) Inmate Hatfield (#A467-151) who was wrongfully terminated from his food Service Work Assignment (without no conduct report written) ...... of him speaking up for the $25 a day pandemic pay

#~~0~~ ~~18~~ 17

that non-food service workers were receiving during the pandemic.

(b) Inmate Davis (#A555-567) was wrongfully terminated from his Food Service Work Assignment because he had to fulfill his religious obligation by performing his five salahs (prayers) a day. and he complained about how pork was not allowed to be cooked in a grill that was used to cook sub meals.

(c) Just recently Inmate Herrington (#A562-202) was wrongfully terminated from his Food Service Work Assignment because how 2020 Ramadan was disrespected and how nasty the M.C.I. Food Service Area is under the Aramark care of Mr. Guiller and his staff.

This shows how the 1st and 14th Amendment is not granted to muslims but being retaliated and terminated for standing for their religious beliefs are.

(N) Though the Plaintiff was granted his appeal and being reinstated back to his Food Service Work Assignment, refusal to have him returned back to his Work Assignment Immediately violated his 1st and 8th Amendments as well as failure to Act and being Deliberately Indifferent and violation of 13th Amendment.

1. On ___ 5-21-20 ___, the Plaintiff had sent a kite

# #18

Buckeye Units Manager Mr. J. Ferguson requesting to withdraw the conduct report Mr. Guiller and Ms. Bianch had written on the Plaintiff because :

a) These defendants (Mr. Guiller & Ms. Bianchi) don't have the authority to write one.

b) Defendant Ms. Griffith was way pass the time to hear the Plaintiff's conduct report.

c) The Plaintiff alerted Mr. Guiller and Ms. Bianchi's supervisors defendants Ms. Turner and Mr. Watson) about how the Aramark had retaliated against the Plaintiff for him fighting for his religious beliefs. Ms. Turner, Mr. Watson, and Mr. Smith had did nothing to assist him on the Ramadan and retaliation matter.

On 5-26-20 , the Plaintiff had sent the same matter to M.C.I. Deputy Warden Of Operations Matter about the reason he needs to be reinstated back to his Food Service Work Assignment. His name is D.W.O. Mr. Melton.

3. Mr. Ferguson withdrew the Plaintiff's conduct report on 5-27-20

4. Mr. Melton had reinstated the Plaintiff back to his Food Service Assignment on 5-28-20 .



# @@ @@, @@
19

5. But defendants Ms. Wainwright, Mr. Guiller, Ms. Bianchi, Ms. Plank, and Ms. Turner had did whatever it took to keep the Plaintiff from fulfilli this work assignment in Food Service. For example:

(A) Mr. Guiller - 6-4-20 had tried to have the Plaintiff reapply back to Food Service

(B) Ms. Bianchi - 6-5-20 had not put the Plaintiff on the roster

(C) Ms. Plank - Had accused the Plaintiff of being in the wrong cohorts (group of dorms). 6-4-20

(D) Ms. Wainwright - 6-9-20 Had accused the Plaintiff of being in the wrong cohorts.

(E) Ms. Turner - Did not verbally had the Plaintiff back on his Work Assignment

6. When the Plaintiff showed good cause that he was in the right cohorts (quadrants) to work in Food Service, he was finally on the Food Service Roster on 6-11-20 .

7. Once the Plaintiff was placed back in Food Service, he was placed in a job that was fit for at least ten workers to work at (which is the dishroom). The Plaintiff

 #20

then had exhausted his grievance process (remedy) to Ms. Turner concerning cruel and unusual punishment on Ms. Turner response to the informal complaint that the Plaintiff had filed to her was, "if you have issues concerning your work assignment, you can get reclassed out of Food Service into another work assignment.)

7. What these defendants had did after the Plaintiff's conduct report was withdrawn and when we was reinstated back to his work assignment had proven that, "the defendants set in motion a series i events" that they knew or reasonably should have known would cause a constitutional violation, even if others actually performed the violation.

. Defendants Ms. Wainwright (who is M.C.I. Warden) and Ms. Plank who is M.C.I. Institutional Inspector) knew the policies, codes, and laws to have the Plaintiff be allowed back to Food Service immediately after he was reinstated back to his work assignment. Then they should of let Mr. Guiller and Ms. Bianchi that the Plaintiff's conduct report was withdrawn and he was able to be back on the Food Service roster immediately through his administrative remedies (kites).

2. The Plaintiff have shown that the defendants up and down the chain of command who can reasonably be said to have "caused him to be subjected" for a violation of law.

1. Next the plaintiff inclusion of a defendants has have been

#~~000~~ #~~000~~ 21

"well grounded in fact and warranted by law."

12. Rather than act on the Plaintiff's complaints about not being able to go back to his work assignment these defendants are liable for failure to make policy or to take action to prevent predictable violations such as the 1st Amendment (retaliation and freedom of speech) and 14th Amendment (due process and equal protection) of rights within their areas of responsibility.

13. The defendants denied the Plaintiff within its juridiction the equal protection of the state policies, codes, and laws

14. After the Plaintiff went back to his work assignment, he and four other inmates were performing kitchen duties in the dishroom that consists of ten inmates to perform together (4 dishsprayers, 2 unloaders, loader, 2 spoon/cup sorters, and dishmachine cleaner). Plaintiff may not be given work assignments that are medically inappropriate (especially during the COVID-19 pandemic), beyond physical capabilities, and unsafe. This is the violation of the 8th Amendment (Cruel & Unusual Punishment & Deliberate Indifference) and 13th Amendment "slavery (or) involuntary servitude" (since Plaintiff's work assignment was a priviledge job not punishment for crime he committed.) The defendants have not provided a safe working condition for the Plaintiff (who is an inmate). The defendants failed to use "reasonable care" to avoid a forseeable risk.

Claims For Relief

# 22

1. The actions of defendants Wainwright, Watson, and Smith in using Friday's Islamic Services (Jummah & Taleem) for Christian Plays, Events, & Programs without need and placing Islamic Services in small fire hazard rooms were done maliciously and sadistically demonstrating that the Plaintiff's religious exercise was substantially burdened forcing him to follow his religious beliefs or keep letting them disrespect his religion. The defendants showed a bona fide favoritism and treatment of group accomodations for Christians over Muslims not providing greater protection for the Plaintiff's rights to believe what he wants attending Jummah in a bigger location fulfilling his religious obligation. He showed the court how religious he is and how his religion must be sincerely held making his beliefs constitutionally protected. What the defendants did is favored Christian viewpoints over Islamic viewpoints and not deny the Plaintiff within its jurisdiction the equal protection of the laws. Therefore the defendants constituted the Establishment Clause, Free Exercise Of Religion, & Freedom Of Religion in violation of the First Amendment Of The United States Constitution. The defendants constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The defendants constituted Equal Protection in violation of the Fourteenth Amendment of the United States Constitution as well as the violations of The Religious Land Use And Institutionalized Persons Act and Religious Freedom Restoration Act.

2. The actions of defendants Wainwright, Watson, Smith, and Plank



23

knowing that they then placed the Plaintiff in limited room space with other muslims for Islamic Services on Fridays that were Fire Hazard were done sadistically and maliciously constituting cruel and unusual punishment and deliberate indifference in violation of the Eighth Amendment of the United States Constitution. The defendants constituted free exercise of religion, establishment clause, and freedom of religion in violation of the 1st Amendment. The defendants constituted equal protection in violation of the 14th Amendment Of The United States Constitution

3. The failure of defendant Plank to take disciplinary action to curb the known pattern of defendants Wainwright, Smith, and Watson placing muslims in Fire Hazard Limited Space Rooms on Friday's Islamic Services for Christian Events, Plays, and Programs to be in the chapel on Islamic days (Friday) constituted deliberate indifference and cruel and unusual punishment caused the above described violation of the Eighth Amendment rights. Knowing through the Plaintiff's grievance complaint that moving over 60 muslims to a Fired Hazard Room but not permanately stopping the defendants from having Christian Events in the chapel on Fridays fully denied the Plaintiff in due process and equal protection of the law in violation of the 14th Amendment to the United States Constitution.

4. The actions of defendants Mathew Guiller, James, Rostorter,

~~1000~~ ~~1000~~ ~~1005~~
29

Bianchi, Turner, Watson, ~~and~~ Plank, and Smith in refusing to take disciplinary action or other action to curb the known pattern of food being properly cook, the right amount of food portions being served, the fruit dates being distribute to all muslims properly, providing fresh fruits and milks for the breakfast bags, and not letting non-muslim food service workers steal Ramadan meals were being done maliciously and sadistically in failing to intervene and supervise the Ramadan meals and breakfast bags being made constituted deliberate indifference and contributed to and proximately caused the above described violation of Eighth Amendment Rights, constituted Freedom Of Religion and Free To Exercise Religion in violation of the First Amendment of the United States Constitution, constituted deliberate indifference and further denied the Plaintiff's due process and equal protection of law in violation of the Fourteenth Amendment to the United States Constitution as well as violating State Policies, Rules, and Codes.

5. The actions of defendants Guiller, Bianchi, and Griffith for the wrongful termination of the Plaintiff by writing an conduct report and finding him guilty of the conduct report that was not heard at the right time as well as quickly reclassing the Plaintiff to another work assignment constituted Freedom Of Speech and Retaliation (since the Plaintiff was standing up for his religious beliefs of unfair treatment during 2020 Ramadan) in violation of the First Amendment Of The United States Constitution.

 # 25

3. Defendants Guiller, James, Rostorfer, Bianchi, Turner, Watson, Plank, and Smith in refusing to take action or other action to curb the known pattern on the unfair treatment of muslims (including the Plaintiff) during the (2020 April and May Ramadan) concerning his meals and breakfast bags violated the Plaintiff's 1st, 8th, and 14th Amendment Of The United States Constitution and constitution of deliberate indifferent and violation of state policies & codes.

4. Defendants Guiller and Bianchi providing an inadequate written deposition of the stealing and out of place charges (becaus the Plaintiff is standing for his religious beliefs) and defendant Griffith (finding him guilty of the conduct report) after the statue of limitation concerning his conduct report being heard on time). Their actions of writing the conduct report inadequately and in actions in conducting the Plaintiff's hearing on time violating the Plaintiff rights under Freedom Of Speech and Retaliation of the 1st Amendment Of The United State Constitution and violating the plaintiff's rights under the Due Process Clause of the 14th Amendment of the United States Constitution.

5. Defendants Guiller, Bianchi, Wainwright, and Plank for refusing the Plaintiff to return back to his Food Service Work Assignment immediately after his coduct report was withdrawn and he was reinstated back to his work assignment constituted

# 26

The defendants constituted deliberate indifference (finding him guilty of stealing and being out of place) and (providing an inadequate written deposition of the charges denied the plaintiff the due process of law (since defendants violated state policies, codes, and rules) in violation of the Fourteenth Amendment to the United States Constitution. The defendant action were done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment Of the United States Constitution

6. The failure of defendants Turner, Watson, and Plank to take disciplinary action and refusing to overturn the plaintiff's disciplinary conviction, despite their knowledge of the above described due process violations, described state code and policy violations, deliberate indifference being constituted and further denied the plaintiff the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

7. The actions of defendants Guiller, Bianchi, Wainwright, and Plank for refusing the Plaintiff from returning back to his work assignment immediately after the Plaintiff's conduct report was withdrawn and he was reinstated back to his Food Service work assignment constituted deliberate indifference and further denied the Plaintiff due process (since they violated state policies and codes) in violation of the Fourteenth Amendment to the United States Constitution.

# 00 00 27

## Relief Requested

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. The moving of Islamic Services (Jummah & Taleem) being moved to a Smaller Room Area on Fridays showing that defendants Wainwright, Watson, and Smith a bona fide favoritism and treatment of Christian Events, Programs, and Programs in chapel on (day of gathering) over Muslims demonstrating that the Plaintiff's religious exercise was substantially burdened not providing equal protection of religion which Plaintiff sincerely held violated the plaintiff's rights under the 1st, 8th, and 14th Amendment Of The United States Constitution and constituted violations of The Religious Land Use And Institutionalized Persons Act, Religious Freedom Restoration Act, and state policies & codes under state law.

2. Defendant Plank's failure to take action to curb the halting of Christian Events, Programs, & Events being placed on Fridays (Jummah and Taleem Services) avoiding Islamic Services to be placed in Small Fire Hazard Rooms violated the Plaintiff's rights under the 8th and 14th Amendment to the United States Constitution.

#29

deliberated indifference and further denied the Plaintiff's due process (since they violated state policies and codes) in violation of the United States Constitution.

B. Issue an injunction ordering defendants Wainwright, Watson, Plank, and Smith or their agents to:

1. For The Plaintiff's The Religious Land Use And Institutionalized erson's Act And Religious Freedom Restoration Act Claim, he is requesting for The Ohio Department Of Rehabilitation And Correction Policy (Number 72-REG-12) and (Subject: Muslim Religious Practice) to be amended and superseded. Through the Exhibit 1 Attachment Ohio Department Of Rehabilitation And Correction Policy #72-REG-12 Muslim Religious Practice) the Plaintiff wish for the court to replace the 12-26-12 version of this policy with a 2021 version of this policy by adding on Page 2 of 4 # IV Procedures (A. Congregate Worship: DRC has two regularly schedule congregate services or activities) the following ● after 2. Taleem: Religious education or studies:
a) Add 3. The reason why Jummah and Taleem should be held in the largest area (ex.chapel) is because the area should be able to accomadate the amount of inmates that are listed in DRC (Department Of Rehabilitation And Correction) D.O.T.S. portal of that particular faith group.

Add 4. There should be no type of religious or ~~eation~~ n

# 29

educational event held on Friday during the Jummah timeframe from 12:30 — 3:00 p.m. .because Jummah is "The Day Of Gathering".

2. For the Plaintiff's Religious Land Use And Institutionalized Persons Act And Religious Freedom Restoration Act Claim, he is requesting for the Ohio Department Of Rehabilitation And Correction Policy (Number 72-REG-12) and (Subject: Muslim Religious Practice) to be amended and superseded. Through the Exhibit 1 Attachment (Ohio ~~Rehabilitation~~ Department Of Rehabilitation And Correction (O.D.R.C.) Policy #72-REG-12 -Muslim Religious Practice) the Plaintiff wish for the court to replace the 12-26-12 version of this policy with a 2021 version of this policy by adding on Page 3 of 4 IV Procedures (E. Holiday or Special Observances: The principle holiday observances are the Ramadan fast and Eid feasts)after 2.(Eid: The Eid-ul-adha meals are to be served in the dining hall after the normal lunch time feeding of the inmate population. The meal is limited to those inmates who were approved to participate in the fast and who attended the prayer service that morning.) the following.

(a.) Based on the D.O.T.S. DRC Portal, only muslims have the responsibility to prepare, cook, and serve Ramadan and Eid Feasts Meals (Based on the Imam's decision Who works on the Islamic Meals,)



b. There should be only muslims who are responsible with preparing and serving the Sahoor (Ramadan Breakfast Bags or brown bag meals) only (based on the Imam's decision).

c. There should be only muslims who are responsible with observing the meals being made and cleaning up their mess once all Ramadan and Eid Feasts are completed (based on the Imam's decision).

d. ONLY THE IMAM SHOULD BE RESPONSIBLE WITH SELECTING THE MUSLIMS WHO ARE ELIGIBLE WORKING ON THE RAMADAN AND EID FEASTS MEALS.

C. Issue an injunction ordering defendants Guiller, Bianchi, Watson, Wainwright, Plank, and Turner to:

1. Always follow all Ohio Revised Codes, Ohio Administrative Codes, Ohio Department Of Rehabilitation And Correction Policies, and other state laws (since they signed DRC 4376 - Standards of Conduct For Contractors/Volunteers and Interns and DRC 1225 Standard Of Employee Conduct (certified Agreement Form). Failure to do so is a demotion or termination from their job position.

D. Award compensatory damages in the following amounts:

# 31

1. $10,000,000.00 jointly and severally against defendants Wainwright, Watson, and Smith for the physical, emotional, and spiritual injuries sustained as a result of Plaintiff's religious rights being violated and maliciously violated state codes, policies, and laws the plaintiff is protected under.

2. $6,000,000.00 jointly and severally against defendants Guiller, James, Bianchi, Rostorfer, and Turner for emotional, physical, and mental injuries sustained after the unfair treatment of the Plaintiff during 2020 Ramadan Month and being wrongfully terminated from his Food Service Work Assignment and violation of state codes, policies, and laws.

3. $1,500,000.00 against defendant Griffith for emotional and mental injuries sustained from denial of due process and violation. of state codes, policies, and laws. protects the Plaintiff's religious and constitutional rights.

4. $5,000,000.00 against defendant Plank for emotional and mental injuries sustained from denial of due process, knowingly letting plaintiff's religious and constitutional rights being violated and for violation of state codes, policies, and laws.

E. Award punitive damages in the following amounts:

1. $50,000.00 each against defendants Wainwright, Watson, and Smith

# 32

2. $20,000.00 each against defendants Guiller, James Bianchi, Rostorfer, and Turner

3. $50,000.00 each against defendants Griffith and Plank.

F. Grant such other relief as it may appear that plaintiff is entitled.

1-29-21

Respectfully Submitted,

Keith Mustin #505-112

M.C.I.
940 Marion-Williamsport Rd.
Marion, Ohio 43301

(1),(2),(3),(4),(5) - See page 32, 33, & 34