UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Keith Mustin,                          Case No. 3:21-cv-321

         Plaintiff,

     v.                                  MEMORANDUM OPINION
                                           AND ORDER

Warden Lyneal Wainwright, *et al.*,

         Defendants.

## I. INTRODUCTION

Plaintiff Keith Mustin, an inmate at the Marion Correctional Institution in Marion, Ohio, who is proceeding *pro se*, asserts a variety of claims for the alleged violation of his rights under the Constitution and state and federal law by Defendants Lyneal Wainwright, Randon Watson, Blair Smith, Wendi J. Griffith, Kasey Plank, Michelle Turner, Matthew Guiller, Ryan James, Melody Bianchi, and Katrina Rostorfer. (Doc. No. 9). The State of Ohio, as an interested party pursuant to Ohio Revised Code § 109.361, filed a motion to dismiss all of Mustin's claims against Defendants Wainwright, Watson, Griffith, Plank, Smith, and Turner, each of whom is a current or former employee of the Ohio Department of Rehabilitation and Correction ("ODRC").[1] (Doc. No. 14). Mustin opposed that motion, (Doc. No. 19), and the State of Ohio filed a brief in reply. (Doc. No. 20). Subsequently, Mustin filed a motion for leave to exceed page limitations for a sur-reply brief,

---

[1] The State of Ohio's representation does not extend to Defendants Guiller, James, Bianchi, and Rostorfer, who were or are employed by Aramark Corporation, an ODRC contractor. (Doc. No. 14 at 1 n.1).

(Doc. No. 23), a motion for leave to file a motion for the appointment of counsel, (Doc. No. 25), and a motion for leave to file a sur-reply brief. (Doc. No. 26). For the reasons stated below, I deny Mustin's motions and grant the motion to dismiss.

## II. BACKGROUND

Mustin alleges the Defendants have favored Christian inmates over Muslim inmates by moving Islamic Jumah and Taleem services into a smaller room on some Fridays,[2] so that the larger area in the institutional chapel can be available for "religious plays, Christian plays, education programs, and other events." (Doc. No. 9 at 6); (*see also id.* at 7). He also alleges the smaller room is a fire hazard due to its lower capacity. (*Id.* at 6). Further, Mustin alleges Muslim inmates have been forced to return to their dorms on certain days when the location of the smaller room was locked down pursuant to security protocols related to the attendance of family members at the Christian plays, and that Smith, Watson, and Wainwright, as well as a former ODRC employee not named as a defendant, are responsible for these actions. (*Id.* at 8).

Mustin also alleges Defendants have favored Christian inmates over Muslim inmates by: (1) allowing Christian inmates working in the chapel to have access to Smith's calendar to schedule Christian events on Friday; (2) providing access to the Bible on e-reading devices but not the Quran; (3) prohibiting non-Christians from participating in certain faith-based re-entry preparation programs; and (4) allowing Christians to have up to three days a week to watch "religious programs, shows, and lectures" while providing other religions with only one day a week to do so. (*Id.* at 11).

---

[2] It is unclear whether this allegedly occurred in 2019 or 2020. (*See* Doc. No. 9 at 7 (alleging Mustin exhausted the grievance system regarding these incidents on April 13, 2019) and at 8 (alleging Mustin filed his grievance on April 20, 2020)). The State of Ohio argues for the first time in its reply brief that Mustin's claims about the Jumah and Taleem services arise from events in 2019 and therefore are barred by § 1983's two-year statute of limitations. (Doc. No. 20 at 2-3). But even if 2019 is the correct time frame, Mustin's claims are not untimely. He filed suit on February 8, 2021, less than two years after exhausting his administrative remedies. (Doc. No. 1). His Amended Complaint relates back to the filing of his original complaint. *See* Fed. R. Civ. P. 15(c).

Next, Mustin contends Muslim inmates were given stale, expired, and undercooked foods during Ramadan in 2020, and that they only received dates with which to break their fasts at sunset for the first nine days of Ramadan. (*Id.*) Mustin filed grievances about these issues, but they were not corrected. (*Id.* at 11-12). Finally, Mustin complains that MCI published the menu for the Jewish Passover meal to all inmates via email but did not do the same for the month-long Ramadan menu. (*Id.* at 13).

Mustin also alleges he was terminated from his food service job in May 2020, in retaliation for making informal and formal complaints about the allegedly improper treatment of Muslins during Ramadan. (*Id.* at 6). He contends Defendant Griffith used a finding of guilt on an "irrelevant conduct report" to force his removal from the food service job. Mustin asserts Guiller and Bianchi retaliated against him for filing grievances about the allegedly discriminatory Ramadan meals, falsely accusing him of stealing food and not being in the proper location. (*Id.* at 14-15). According to Mustin, Griffith knew the allegations against him were untrue and that her failure to dismiss the conduct report also was retaliatory. (*Id.* at 16). Mustin alleges the finding of guilt was rescinded a week later, and he was reinstated to his food service job, after "the appropriate administrative staff" at MCI recognized the flaws in the conduct report. (*Id.* at 6-7).

Mustin alleges Guiller and Bianchi continued to retaliate against him in the weeks following his reinstatement by attempting to require him to reapply for his position, leaving him off the schedule, and requiring him and four other inmates perform duties which should be performed by at least ten inmates. (*Id.* at 20-22).

### III. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94

3

(2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008).

### IV. Discussion

#### A. Religious Claims

##### 1. First Amendment and RLUIPA

Mustin first asserts Defendants' conduct violates his rights under First Amendment free exercise clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by imposing a substantial burden on his religious practices.

4

The First Amendment states, in part, that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. *See also Cantwell v. Conn.*, 310 U.S. 296, 303 (1940) (holding the First Amendment applies to the States by incorporation through the Fourteenth Amendment). The free-exercise inquiry has two parts: (1) "whether 'the belief or practice asserted [as allegedly prohibited] is religious in the [plaintiff's] own scheme of things' and is 'sincerely held'; and (2) if the "'prison regulation impinges on inmates' constitutional rights, [is] the regulation . . . valid . . . [because] it is reasonably related to legitimate penological interests?'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) (further citation omitted) (second alteration by *Maye*).

Mustin argues he has a sincerely held belief that he must gather with other Muslims on Fridays for Jumah and Taleem services and that the Defendants have substantially burdened that belief by moving those services from the chapel in order to accommodate Christian events. (Doc. No. 9 at 7-8; Doc. No. 19 at 6-7). But, in order to state a Free Exercise claim, Mustin must allege the Defendants' conduct denied him the opportunity to participate in this activity. *See, e.g., Maye*, 915 F.3d at 1083. He has not done so. Instead, he acknowledges Muslim inmates are provided with space in which to meet together for those services, and he admits "[t]he room space was not an important factor" to him. (Doc. No. 19 at 7). Mustin's apparent concern is that the Defendants have "disrespect[ed] his religion" by permitting Christian events to be held on Fridays when the Defendants know those events will require that Islamic services be moved to a smaller space. (*Id.* at 6). As Mustin appears to concede, this is, at most, an equal protection claim, and not a free exercise claim. (*Id.* at 5).

Mustin also asserts Defendants violated his Free Exercise rights because Muslim inmates were served insufficient portions containing undercooked, stale, and expired food, and because inmates did not receive a date to consume to break their evening fasts on each day of Ramadan.

5

Inmates "have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs[, b]ut there is no constitutional right for each prisoner to be served the specific foods he desires." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) and *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999)). The Sixth Circuit has repeatedly held inmates fail to state a First Amendment free exercise claim where the challenged prison policy does not force inmates to violate their religion. *See, e.g., Robinson*, 615 F. App'x at 314; *Spies*, 173 F.3d at 406-07; *Abdullah v. Fard*, 173 F.3d 854, at *1 (6th Cir. 1999) (unpublished table decision); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995).

Mustin fails to state a claim with respect to his allegations concerning the caloric content and the subpar quality of some of the meals offered during Ramadan because he does not allege he suffered any injury. While "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions[,] . . . [i]f the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Colvin*, 605 F.3d at 290 (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). Mustin alleges the portion sizes Muslims received during Ramadan were too small, but he does not allege he was forced to violate his religious dietary restrictions or otherwise suffered harm. Therefore, his allegations regarding the food served during Ramadan are insufficient to state a plausible claim for relief.

Mustin's RLUIPA claim fares no better. Under the RLUIPA, Mustin has the burden to show "(1) [his] desired religious exercise is motivated by a 'sincerely held religious belief' and (2) the government is substantially burdening that religious exercise." *Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) (quoting *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019)). The first prong requires courts to "determine whether the line drawn by the plaintiff between conduct consistent and inconsistent with her or his religious beliefs reflects an honest conviction."

6

*Ackerman*, 16 F.4th at 180 (citations and internal quotation marks omitted). The second prong asks whether a prison has placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs or effectively bar[red] his sincere faith-based conduct." *Id.* at 184 (citations and internal quotation marks omitted). Mustin does not plausibly allege Defendants' conduct has placed substantial pressure on him to violate his beliefs or effectively barred his sincere faith-based conduct. Therefore, I grant the State of Ohio's motion to dismiss this claim as well.

### 2. Equal Protection

Mustin also asserts Defendants' conduct violated the Equal Protection Clause of the Fourteenth Amendment. A plaintiff who brings an Equal Protection claim under § 1983 "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). Rational-basis scrutiny applies to Mustin's Equal Protection claim because I already have concluded the same set of facts underlying this claim do not support a plausible Free Exercise claim. *See, e.g., Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004) ("Davey also argues that the Equal Protection Clause protects against discrimination on the basis of religion. Because we hold . . . that the program is not a violation of the Free Exercise Clause, however, we apply rational scrutiny to his equal protection claims."); *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right. However, since we hold . . . that the Act does not violate appellee's right of free exercise of religion, we have no occasion to apply to *the challenged classification* a standard of scrutiny stricter than the traditional rational-basis test.").

Mustin alleges Defendants violated the Equal Protection Clause by (1) moving Islamic services to smaller rooms in order to hold Christian plays and programs in the larger rooms, thereby favoring Christian inmates over Muslim inmates and (2) providing inadequate food supplies for Ramadan meals. (Doc. No. 9 at 23-25).

Mustin's location argument is unavailing, as the Equal Protection Clause does not require that every religious group within a prison be provided with identical or equal facilities. *See Thompson v. Com. of Ky.*, 712 F.2d 1078, 1081 (6th Cir. 1983) (citing *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972)). Mustin does not deny that Defendants moved Islamic services to another room in order to accommodate the larger number of people attending the Christian programs. (*See* Doc. No. 19 at 5-8). Thus, even if the periodic displacement of Islamic services could be seen to infringe upon Mustin's constitutional rights,[3] Defendants' facilities-allocation decisions are "reasonably related to legitimate penological interests" and do not violate the Equal Protection Clause. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

Mustin also fails to state a plausible Equal Protection Claim based upon his food service complaints, as he has not offered any allegations which suggest any of the Defendants took or failed to take any action because Mustin or other inmates are Muslim. *See Herron*, 203 F.3d at 417 (plaintiff "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class") (emphasis added).

### B.   RETALIATION AND DISCIPLINE

The Constitution prohibits "[r]etaliation based upon a prisoner's exercise of his or her constitutional rights," *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001), including the First Amendment right to file nonfrivolous grievances against prison officials on the inmate's own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). An inmate asserting a claim for unlawful retaliation resulting from the exercise of the inmate's First Amendment rights "must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was taken

---

[3] I have already rejected this view while considering Mustin's Free Exercise and RLUIPA claims.

8

at least in part because of the exercise of the protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999)).

Mustin alleges Guiller, Bianchi, and Griffith retaliated against him for advocating for Muslims concerning Ramadan in 2020 by writing "an irrelevant conduct report," finding him guilty of the conduct report, and terminating his food service position. (Doc. No. 9 at 16-17).

The State of Ohio argues Mustin has not stated a plausible retaliation claim because there is no constitutional right to an effective grievance system and because his grievances did not assert violations of any other constitutional right. (Doc. No. 14 at 26-27). But this is not what the law requires. Instead, the First Amendment protects an inmate's free-speech rights by protecting the inmate's ability to file a nonfrivolous grievance, whether that grievance involves the assertion of a constitutional violation or not.

But even if I assume Mustin's grievances were not frivolous, he still cannot prevail on his retaliation claim because he has not plausibly alleged a causal connection between his grievances and any adverse action. Mustin offers only "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). *See also Smith*, 250 F.3d at 1038 (causation element of retaliation claim ultimately requires plaintiff to provide proof of decisionmaker's subjective motivation).

In some situations, circumstantial evidence, including the timing of events, may be sufficient to plead a causal connection between protected conduct and an adverse action. *See Thaddeus-X*, 175 F.3d at 399. But the Sixth Circuit "has been reluctant to find that . . . evidence [of temporal proximity] alone establishes retaliatory motive." *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) (citation omitted). And Mustin has not identified any protected activity which occurred close in time to the conduct report. The documents Mustin submitted show he had not filed a grievance or informal complaint regarding Ramadan, food service, or space allocation for over three months

9

prior to the issuance of the conduct report. (*See* Doc. No. 24-2 at 3-10). Thus, Mustin has not alleged even circumstantial evidence of a causal connection between his protected conduct and any alleged adverse action.

Mustin failed to plead "allegations of retaliatory animus with 'specific, nonconclusory allegations . . . that could support a jury verdict at trial.'" *LaFountain v. Mikkelsen*, 478 F. App'x 989, 992 (6th Cir. 2012) (quoting *Thaddeus-X*, 175 F.3d at 399-400) (alteration in *LaFountain*). Therefore, I grant the State of Ohio's motion to dismiss his retaliation claim.

### C. STATE LAW CLAIMS

Mustin claims Defendants' actions also violated Ohio "Policies, Rules, and Codes." (Doc. No. 9 at 25)

The State of Ohio "has not waived sovereign immunity for state law damages claims against the State in federal court." *Jones v. Hamilton Cnty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016) (citing *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985)) (emphasis omitted). The doctrine of sovereign immunity generally bars state law claims against state actors like the individual Defendants in federal court, whether those claims are against the state actor in his official capacity, *Jones*, 838 F.3d at 786, or his individual capacity. *Williamson v. Slusher*, No. 17-4271, 2018 WL 11303086, at *3 (6th Cir. Oct. 29, 2018) (citing Ohio Rev. Code § 9.86 and § 2743.02(F), and *McCormick v. Miami Univ.*, 693 F.3d 654, 664-65 (6th Cir. 2012)).

There is a limited exception to this rule – if Mustin first had filed a complaint with the Ohio Court of Claims, *see, e.g., In re Ohio Execution Protocol Litigation*, 709 F. App'x 779, 781 (6th Cir. 2017) – but Mustin does not assert he did so. Therefore, his damages claims do not fall within that exception. I dismiss those claims for lack of subject matter jurisdiction.

Further, as the State of Ohio notes, Ohio law does not create a private right of action for the violation of state policies unless that intent was clearly expressed by the Ohio legislature. *See, e.g.,*

10

*Fawcett v. G.C. Murphy & Co.*, 348 N.E.2d 144, 147 (Ohio 1976). Therefore, Mustin has not stated a plausible claim for injunctive relief as to this alleged violation of state law.

Finally, a plaintiff may not pursue a § 1983 based upon alleged violations of state law only. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their <u>federally guaranteed rights</u> and to provide relief to victims if such deterrence fails.") (citing *Carey v. Piphus,* 435 U.S. 247, 254-57 (1978)) (emphasis added).

### D. REMAINING DEFENDANTS

Section 1915 states that a court "shall" dismiss a case commenced in forma pauperis if the plaintiff fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). In light of my conclusion that Mustin fails to state a plausible claim for relief, I also dismiss his claims against Defendants Guiller, James, Bianchi, and Rostorfer, as those claims are based upon the same set of facts as Mustin's claims against the Defendants employed by the ODRC.

### E. PLAINTIFF'S MOTIONS

Mustin has filed a motion for leave to exceed page limitations, a sur-reply brief, and, subsequently, a motion for leave to file a sur-reply brief. (Doc. Nos. 23, 24, and 26). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 481 (6th Cir.2003)) (alteration in *Key*). While the State of Ohio raised a statute of limitations argument for the first time in its reply brief, I have rejected that argument as unfounded. Mustin has not identified any other new arguments or evidence in the reply brief.

11

Therefore, I conclude the circumstances do not warrant additional briefing beyond what was initially submitted and deny Mustin's motions for leave.

Mustin also filed a motion for the appointment of counsel. (Doc. No. 25). The Sixth Circuit has held there is no constitutional or statutory right to appointed counsel in civil cases, but that such an appointment is within a court's discretion. *Glover v. Johnson,* 75 F.3d 264, 268 (6th Cir. 1996); *see also Abdur-Rahman v. Michigan Dep't of Corr.,* 65 F.3d 489, 492 (6th Cir. 1995). Appointment of counsel in a civil action is "a privilege justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (citations omitted). This case does not involve "exceptional circumstances" justifying the appointment of counsel, as Mustin has failed to allege a plausible claim for relief, and therefore I deny his motion.

## V. CONCLUSION

For the reasons stated above, I deny Mustin's motions, (Doc. Nos. 23, 25, and 26) grant the State of Ohio's motion to dismiss, (Doc. No. 14), and dismiss Mustin's claims against all Defendants.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

12